1   WO                                                                      JL

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Marcos Vaca,                          No.   CV 18-04593-PHX-JAT (MTM)

10                        Plaintiff,

11   v.                                     **ORDER**

12   Bill Risen, et al.,

13                        Defendants.

14

15          Plaintiff Marcos Vaca, who is currently confined in the Arizona State Prison

16   Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants

17   Chad Hertz and Allen Salee move for summary judgment.  (Doc. 41.)  Plaintiff was

18   informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d

19   952, 962 (9th Cir. 1998) (en banc) (Doc. 44), and he opposes the Motion.  (Doc. 48.)

20   Plaintiff has also filed a Motion for Status (Doc. 57.)

21          The Court will grant the Motion for Status insofar as this Order informs Plaintiff of

22   the status of the case and will grant the Motion for Summary Judgment.

23   **I.      Background**

24          As relevant to the Motion for Summary Judgment, Plaintiff alleges in Count Two

25   of the Complaint that Defendants Salee and Hertz taunted Plaintiff and that Hertz told

26   Plaintiff to cover the camera in his cell so that Salee and Hertz could enter Plaintiff's cell

27   and assault him.  (Doc. 1 at 6.)[1]  Plaintiff refused, and as he was speaking with Defendant

28

          [1] The citation refers to the document and page number generated by the Court's

1    Hertz, Defendant Salee snuck up to the cell door and began to pepper-spray Plaintiff "for

2    no reason other than to commit a federal crime against [Plaintiff.]" (*Id.*) After Salee

3    emptied the can of pepper spray, he and Hertz entered Plaintiff's cell and placed him in

4    handcuffs.  (*Id.*)  The handcuffs were so tight that Plaintiff lost feeling in his hands.  (*Id.*)

5    Salee and Hertz began to lead Plaintiff to the booking area and they slammed Plaintiff's

6    head into the wall "with a deadly force." (*Id.*)  At that point, Hertz and Salee placed Plaintiff

7    in a "restraining chair" in violation of "major protocols and procedures."  (*Id.*)  The officers

8    knew Plaintiff was "full of pep[p]er spray and need[ed] to be put in a shower" but instead

9    they restrained him for approximately two hours so that he could "choke and gag" on the

10   pepper spray.  (*Id.*)

11        On screening the Complaint under 28 U.S.C. § 1915A(a), the Court determined that

12   Plaintiff stated a Fourteenth Amendment excessive force claim in Count Two against

13   Defendants Salee and Hertz and directed them to answer the claim.  (Doc. 6.)  The Court

14   dismissed the remaining claims and Defendants.  (*Id.*)

15        In their Motion for Summary Judgment (Doc. 41), Defendants assert that Plaintiff

16   failed to properly exhaust the available administrative remedies with respect to his

17   excessive force claim against them before he filed the Complaint in this case.

18   **II.    Summary Judgment Standard**

19        A court must grant summary judgment "if the movant shows that there is no genuine

20   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

21   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

22   movant bears the initial responsibility of presenting the basis for its motion and identifying

23   those portions of the record, together with affidavits, if any, that it believes demonstrate

24   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

25        If the movant fails to carry its initial burden of production, the nonmovant need not

26   produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,

27   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts

28

Case Management/Electronic Case Filing system.

1    to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

2    contention is material, i.e., a fact that might affect the outcome of the suit under the

3    governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

4    jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

5    242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

6    Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its

7    favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

8    it must "come forward with specific facts showing that there is a genuine issue for trial."

9    *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

10   citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

11        At summary judgment, the judge's function is not to weigh the evidence and

12   determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

13   477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

14   all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited

15   materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

16   **III.    Facts**

17        Plaintiff did not file a controverting statement of facts or a separate statement of

18   facts. In addition, in his Response, Plaintiff does not address most of Defendants'

19   arguments. Rather, Plaintiff merely repeats some of the allegations in the Complaint and

20   contends that he exhausted the available administrative remedies before he filed the

21   Complaint. The Court will therefore construe Plaintiff's verified Complaint as an affidavit

22   in opposition to the summary judgment motion to the extent that statements therein are

23   based on Plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

24   2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence

25   in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.

26   1995) (verified complaint may be used as an affidavit opposing summary judgment if it is

27   based on personal knowledge and sets forth specific facts admissible in evidence).

28   However, to the extent Plaintiff failed to controvert Defendants' facts in his Complaint, the

1    Court will assume those facts are uncontroverted for the purposes of this Order.

2    *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (if a summary judgment

3    motion is unopposed, Rule 56 "authorizes the court to consider a fact as undisputed").

4    **A.    December 1, 2018 Incident**[2]

5        On November 30, 2018, Plaintiff was in custody at the La Paz Adult Detention

6    Facility (hereinafter, the "Jail") and housed in H-Pod.[3]  (Doc. 42 at 1 ¶ 1.)  That night,

7    Plaintiff and non-party Officer McClean "got into 'some kind of argument/dispute.'" (Doc.

8    42-1 at 56:17-25.)  Officer McClean radioed for Defendants Hertz and Salee to come to

9    the control tower and explained to them that Plaintiff was refusing to lockdown.  (Doc. 42

10   at 2 ¶ 10.)

11       Defendants Hertz and Salee went to Plaintiff's cell and spoke with Plaintiff for

12   approximately ten minutes, until non-party Sergeant Moore told Plaintiff, "this ends right

13   here." (*Id.* ¶¶ 11-12, 14.)  Later that night, Defendants Hertz and Salee passed out hygiene

14   packs to detainees in H-Pod, including Plaintiff.  (*Id.* at 3 ¶ 16.)  The hygiene packs

15   included razors, among other hygienic items. (*Id.* ¶ 17.)  Just after midnight, Defendants

16   Hertz and Salle returned to the H-Pod to retrieve the razors.  (*Id.* ¶ 18.)  Defendant Hertz

17   went to Plaintiff's cell, and Defendant Salee went to the detainee in the cell next to

18   Plaintiff's cell.  (*Id.*¶ 21.)  Plaintiff was not initially asked to return the razor.[4]  (Doc. 42-1

19   at 16.)

20       After more than one minute, Defendant Hertz advised Defendant Salee to retrieve a

21   MK-9 Oleoresin Capsicum ("OC") canister. (Doc. 41 at 4 ¶ 28.)  Defendant Salee returned

22   approximately one minute later with the MK-9 OC canister.  (*Id.* at 5 ¶ 33.)  When

23   Defendant Salee returned, Salee "got on his knees and crawled" to Plaintiff's cell and

24

25       [2] Many of Plaintiff's allegations in the Complaint and Defendants' specific facts
26   regarding the December 1, 2018 incident are irrelevant to the Court's exhaustion decision
     and will therefore be omitted.

27       [3] H-Pod is a maximum security segregation pod. (Doc. 42 at 1 ¶ 1.)

28       [4] Defendants dispute this and assert that Defendant Hertz gave multiple commands
     to Plaintiff to return his razor, but Plaintiff refused to comply. (Doc. 42 at 4 ¶ 24.)

1    deployed the OC spray in the cell.[5]  (Doc. 42-1 at 21.)  Defendant Hertz gave Plaintiff a

2    final order to give up his razor, and Plaintiff refused.  (*Id.* ¶ 37.)  Defendant Salee then

3    inserted the wand underneath Plaintiff's cell door and released a 2-3 second burst of OC

4    spray into the cell.  (*Id.* ¶ 39.)

5         Defendant Hertz ordered Plaintiff to lie on the ground with his hands behind his

6    back.  (*Id.* at 6 ¶ 45.)  Plaintiff complied, and Defendants entered the cell to handcuff

7    Plaintiff. (*Id.* ¶ 47.)  Defendants escorted Plaintiff to the booking area.  (*Id.* ¶ 48.)  While

8    Defendants escorted Plaintiff, they stopped in between Doors 8 and 9, and with deadly

9    force, slammed his head into the wall.  (Doc. 42-1 at 29.)  When they arrived at the booking

10   area, Defendants strapped Plaintiff into a restraining chair.  (Doc. 42 at 7 ¶ 54.)  Plaintiff

11   was then moved into the change-out shower room in the booking area.  (*Id.* ¶ 55.)  Plaintiff

12   remained in the booking area for just under an hour and a half.  (*Id.* ¶ 57.)

13        **B.    La Paz County Jail Inmate Grievance Procedure**

14        La Paz County Jail detainees have access to an electronic Kiosk that allows them to

15   review the Inmate Handbook and fill out formal grievance forms, among other things.[6]  (*Id.*

16   at 10 ¶ 78.)  The Inmate Handbook sets forth a three-step grievance process.  (Doc. 42-1 at

17   91.)  First, the detainee must attempt to informally resolve the issue with a staff member

18   or the Shift Supervisor within five days of the event causing the concern.  (*Id.* at 89.)  The

19   informal resolution may be conducted orally.  (*Id.*)  A staff member who receives a

20   detainee's verbal or written concern attempts to resolve the issue informally.  (*Id.*)  If the

21   issue is beyond the scope of that employee's authority, he/she notifies the Shift Supervisor

22   of the issue as soon as practical.  (*Id.*)  The Shift Supervisor then attempts to resolve the

23   issue informally.  (*Id.*)

24   . . . .

---

26        [5] Defendants dispute this and assert that Defendants Salee walked to the cell and stood next to Defendant Hertz before any OC spray was deployed.  (Doc. 41 at 5 ¶ 36.)

27
28        [6] To utilize the Jail Kiosk, a detainee must first electronically acknowledge receipt of the Inmate Handbook on the Kiosk.  (Doc. 42 at 10 ¶ 79.)  Plaintiff acknowledged receipt of the Inmate Handbook before he first used the Jail Kiosk on February 10, 2018.  (*Id.* ¶ 80.)

1    If a detainee is unsatisfied with the response to an informal grievance, he is required

2    to submit a formal grievance form within five days "of the alleged incident."[7]  (*Id.* at 90.)

3    The grievance is forwarded to the facilities grievance officer, who attempts to resolve the

4    grievance within five working days.  (*Id.* at 91.)  A written response consisting of both the

5    decision and reasons for that decision is returned to the detainee.[8]  (*Id.*)  Finally, if a

6    detainee is unsatisfied with the formal grievance decision, he must submit a written appeal

7    to the Jail Commander within five days of receipt of the formal grievance decision.  (*Id.*)

8    The Jail Commander renders a final written decision within five days of receipt of the

9    appeal.  (*Id.*)

10        **C.      Plaintiff's Grievances**

11        Plaintiff testified that he was aware that he was required to file grievances before

12   bringing a lawsuit.  (*Id.* at 51-52.)  On December 1, 2018, at approximately 3:30 a.m., less

13   than three hours after the incident described in the Complaint, Plaintiff submitted a formal

14   grievance via the Kiosk.  (*Id.* at 101-02.)  Plaintiff wrote in the grievance that Defendants

15   Hertz and Salee had pepper-sprayed him for no reason, removed him from his cell in

16   handcuffs, and, while escorting him to the booking area, slammed his head into the wall

17   with deadly force.  (*Id.*)

18        Just before 4:00 a.m. on December 1, Plaintiff submitted a "General Request" to the

19   "Supervisor Kites Group," addressed to Sergeant Solano, in which Plaintiff reasserted that

20   Defendants had pepper-sprayed him for no reason and slammed his head into the wall.  (*Id.*

21   at 101.)   A few hours after Plaintiff submitted the "General Request," a supervisor

22   responded to the request, stating that the message had been "forwarded to the appropriate

23   officials."  (*Id.* at 100.)  There is no evidence that the formal grievance was forwarded to

24

25

26   [7] The grievance procedure also states, "A REMINDER: Inmates must file
     grievances within (5) days of the alleged incident and ONLY after attempting to informally
27   resolve it through staff members and the Shift Supervisor."  (Doc. 42-1 at 90.)

28   [8] The grievance procedure does not specify what is required of a detainee if he does
     not receive a response to the formal grievance, i.e., whether he may proceed to the next
     step of the process or must take some other action.

1    Sergeant Solano or another official, or that a written response was issued in response to

2    either the formal grievance or the "General Request."⁹

3          On December 8, 2018, Plaintiff submitted a "General Request" to the "Supervisor

4    Kites Group," addressed to Commander Suffle.  (*Id.* at 95.)  Plaintiff stated that he was

5    "moving the grievance" he had filed on December 1, 2018 "to the second level." (*Id.*)  On

6    December 9, 2018, Jail Staff informed Plaintiff that his December 8 grievance had been

7    given to Commander Suffle.  (*Id.* at 93.)

8          Plaintiff testified that he sent the Complaint to the Court either on December 7 or 8,

9    knowing that his December 1, 2018 grievance was still pending. (*Id.* at 59.)  However, the

10   envelope in which Plaintiff mailed the Complaint is post-marked December 5, 2018. (Doc.

11   1-1.)  Thus, Plaintiff submitted the Complaint for mailing no later than December 5, 2018,

12   and December 5, 2018 is the filing date of his Complaint.  *See Houston v. Lack*, 487 U.S.

13   266, 276 (1988) (a pro se prisoner's filing is deemed filed on the date of its submission to

14   prison officials for mailing, as opposed to the date of its receipt by the court).

15   **IV.**    **Discussion**

16       **A.**    **Exhaustion Standard**

17         Under the Prison Litigation Reform Act, a prisoner must exhaust "available"

18   administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a);

19   *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926,

20   934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in

21   accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

22   Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523

23

24   _____

25       ⁹ On December 7, 2018, Plaintiff submitted a second grievance regarding the
     December 1, 2018 incident. (*Id.* at 95.)  He addressed the grievance to Sergeant Solano

26   and included with the grievance a "Declaration," in which Plaintiff asserted that
     Defendants Hertz and Salee had threatened him, tried to bait him into fighting them, and

27   told Plaintiff to cover up the camera in his cell so that they could fight him. (*Id.* at 95-96.)
     Plaintiff wrote that he never refused to return the razor, Defendant Salee snuck up to the

28   cell and pepper-sprayed Plaintiff, Defendants Hertz and Salee slammed Plaintiff's head
     against the wall "numerous time[s]," and Defendants put him in a restraining chair for two
     hours. (*Id.* at 96.)

1   (2002), regardless of the type of relief offered through the administrative process, *Booth v.*

2   *Churner*, 532 U.S. 731, 741 (2001).

3          The defendant bears the initial burden to show that there was an available

4   administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d

5   1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must

6   demonstrate that applicable relief remained available in the grievance process).  Once that

7   showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in

8   fact, exhausted administrative remedies or "come forward with evidence showing that there

9   is something in his particular case that made the existing and generally available

10  administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The

11  ultimate burden, however, rests with the defendant.  *Id.*  Summary judgment is appropriate

12  if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a

13  failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).  If a court grants summary

14  judgment on non-exhaustion grounds, dismissal is without prejudice.  *See Lira v. Herrera*,

15  427 F.3d 1164, 1170 (9th Cir. 2005); *McKinney v. Carey*, 311 F.3d 1198, 1200– 01 (9th

16  Cir. 2002).

17          **B.      Discussion**

18          Defendants have submitted evidence of the grievance procedure available at the Jail.

19  Defendants have also presented evidence that Plaintiff bypassed the first step of the

20  grievance procedure by failing to attempt to informally resolve the issue before he filed a

21  formal grievance.  However, jail officials have discretion to waive procedural defects and

22  consider detainees' complaints on the merits.  *See, e.g., Gonzalez v. Adams*, 1:09-cv-01284-

23  AWI-SKO, 2013 WL 636730, at *5 (E.D. Cal. Feb. 20, 2013) (unpublished) ("Defendants

24  have submitted no authority for the proposition that prison officials lack the discretion to

25  accept untimely appeals").  Further, jail officials were obligated to inform Plaintiff if there

26  were any deficiencies with his grievance, and Defendants may not go back during litigation

27  and reject a grievance on procedural grounds never raised by jail officials at the time.  *See*

28  *Brown*, 422 F.3d at 937.

1     Plaintiff was not informed that there was any deficiency with his grievance or that

2    he had failed to show an attempt to informally resolve the issue.  Jail officials did not

3    determine at the time that a failure to attempt to informally resolve the issue was a ground

4    for rejecting the grievance; thus, they effectively waived that requirement.  Thus, the Court

5    will consider whether Plaintiff thereafter properly completed the grievance procedure

6    before he filed the Complaint in this case.

7     As noted above, upon the filing of a formal grievance, the grievance is forwarded

8    to a grievance officer, who has five working days to attempt to resolve the issue and provide

9    a written response to the detainee.  Plaintiff filed his formal grievance on December 1,

10    2018, which was a Saturday; thus, the grievance officer had until Friday, December 7,

11    2018, to provide a written response to Plaintiff.  The available evidence establishes that

12    Plaintiff submitted the Complaint for mailing no later than December 5, 2018, and therefore

13    filed his Complaint, before the five working day period for Defendants to respond to the

14    December 1 formal grievance had elapsed.  (Doc. 42-1 at 91.)  Thus, the evidence

15    establishes that Plaintiff did not properly complete the available grievance procedure

16    before he initiated this case.  *See Vaden*, 449 F.3d at 1051 (a prisoner must exhaust

17    available remedies before filing any papers in federal court); *McKinney v. Carey*, 311 F.3d

18    1198, 1200 (9th Cir. 2002) (exhaustion is a precondition to filing suit).  Therefore, the

19    burden shifts to Plaintiff to show that he exhausted administrative remedies or "come

20    forward with evidence showing that there is something in his particular case that made the

21    existing and generally available administrative remedies effectively unavailable to him."

22    *Albino*, 747 F.3d at 1172.

23     In his Response to the Motion for Summary Judgment, Plaintiff states that on

24    December 1, 2018, he "wrote" a § 1983 civil rights complaint and mailed the complaint to

25    the Court "after [he] exhausted" his administrative remedies.  (Doc. 48 at 1.)  Plaintiff

26    claims that he spoke to Commander Suffle regarding "this issue and error," and Suffle told

27    Plaintiff that he would not send the grievances to the third level.  (*Id.* at 2.)  Plaintiff asserts

28    that he "filed all [his] grievance[s]" to the third level before he mailed the Complaint.  (*Id.*)

1    Plaintiff offers no evidence to support the claim that Commander Suffle refused to send

2    Plaintiff's grievances to the third level or that he otherwise submitted his grievances to the

3    third level.  Moreover, Plaintiff does not submit any evidence that controverts the evidence

4    that Plaintiff failed to complete the grievance procedure before he filed the Complaint.

5           The undisputed evidence, viewed in the light most favorable to Plaintiff, shows he

6    failed to exhaust the available administrative remedies prior to filing his suit in federal

7    court.  The Court will therefore grant the Motion for Summary Judgment on the issue of

8    exhaustion, and Plaintiff's claim will be dismissed without prejudice.  *See McKinney* , 311

9    F.3d at 1200 (a court must dismiss an action if the prisoner was in the process of exhausting

10   remedies when the civil action was filed; however, the dismissal is without prejudice to

11   refiling).   Plaintiff may refile his claim in a new action after exhausting available

12   administrative remedies.

13   **IT IS ORDERED:**

14          (1)    The reference to the Magistrate Judge is **withdrawn** as to Defendants'

15   Motion for Summary Judgment (Doc. 41) and Plaintiff's Motion for Status (Doc. 57).

16          (2)    Plaintiff's Motion for Status (Doc. 57) is **granted** insofar as this Order

17   informs Plaintiff of the status of this case.

18          (3)    Defendants' Motion for Summary Judgment (Doc. 41) is **granted as to the**

19   **issue of exhaustion**, and the action is terminated without prejudice.  The Clerk of Court

20   must enter judgment accordingly.

21          Dated this 28th day of August, 2020.

22

23

24   _____

25          James A. Teilborg
      Senior United States District Judge

26

27

28